UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,                         Case Number 05-20008-BC
                                                       Honorable David M. Lawson

v.

WILLIAM EDWIN POPHAM, and
MICHAEL TIMOTHY CRANE,

                    Defendants.
_____/

### OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO SUPPRESS EVIDENCE AND RETURN PROPERTY

The defendants, William Popham and Michael Crane, are charged in a nine-count indictment with manufacturing marijuana and unlawfully possessing various firearms. The charges arise almost entirely from evidence seized from their residence and outbuilding located at 1131 Deer Run Trail, Alger, Michigan pursuant to a search warrant, which they now challenge in their present motion to suppress. They contend that the search warrant is invalid because the supporting affidavit contains information derived from a prior search that has been declared illegal, and it otherwise contains statements of the affiant's personal observations that were made during a warrantless intrusion into the curtilage of the defendants' home or are false in themselves. They also argue that the search warrant was overbroad and the police seized items that were not described with particularity in the search warrant and are not evidence or contraband, and they ask for an order for return of that property. The Court held an evidentiary hearing on August 8, 2005 and heard testimony from the search warrant affiant and a defense investigator. The Court now finds that the search warrant was based on probable cause, the search conducted pursuant thereto was valid, and the seizure of some of the defendants' property was not justified. The Court, therefore, will deny the motion to suppress

evidence and order the return of the seized property that does not constitute contraband, evidence of criminal activity, or fruits of the crime.

I.

In March 2000, Michigan police officials executed search warrants at the defendants' residence at 1131 Deer Run Trail, Alger, Michigan, and another property owned by the defendants, 1301 Marsh, Oscoda County, Michigan. The police seized over 200 marijuana plants. A state court determined these warrants were not supported by probable cause, suppressed the evidence seized, and dismissed the charges against the defendants. The parties have not identified the tribunal that invalidated the prior search or informed the Court when the ruling was issued, but it is undisputed that the police had knowledge of the decision at the time the search warrant affidavit was drafted in this case. Defs.' Mot. Suppress Ex. 4, Supplemental Incident Report (Sept. 26, 2004).

On September 11, 2004, Michigan State Police Trooper William Veltman allegedly received an anonymous tip that marijuana plants again were being grown at the 1131 Deer Run Trail address. The next day, the trooper went to the property to make observations. He testified that he arrived at the area of the defendants' residence at approximately 6:15 a.m. He parked his vehicle alongside a dirt road he considered to be state land and walked approximately 100 yards through a wooded area he believed to be the land of the defendants' neighbor. Veltman stated that he had received permission from the neighbor several months earlier to enter his land.

The defendants' property contains a chain link fence that separates a wooded area from the house and outbuilding. However, according to an affidavit signed by defendant Popham, the property extends beyond the fence itself. Veltman acknowledged that he made his observation of the defendants' outbuilding from outside a fence surrounding both the residence and an outdoor

-2-

greenhouse-style structure.  Trooper Veltman testified that he did not cross any fence lines or observe any "no trespassing" signs, although the defendants offered in evidence photographs of such signs on the defendants property.

The defendants introduced evidence at the hearing that the sun rose on that day at 7:13 a.m., and civil twilight occurred at 6:44 a.m.  Veltman said that he remained in the area and viewed the clearing where the defendants reside for thirty to forty minutes from a location ten to fifteen feet outside a chainlink fence.  He believed that the defendants' property started at the fence line; however, the defendants contend that they have a garden outside the fence in the vicinity of Veltman's observation point, and the defendants have junk vehicles in various states of disrepair around the outside of the fence.

Veltman testified that he observed a twenty-by ten-foot outdoor growing building from a distance of 120 to 150 feet from where he stood.  The building had a wood frame covered by plywood around the base and opaque Visqueen above.  The roof was nine to twelve feet high at its peak, and the end of the building facing Veltman had no Visqueen in the gable, although Veltman learned later that the space was covered with black mesh that allowed some light to pass through.

The defendants offered evidence that there was fog in the general area at the time.  In fact, weather records documented visibility that was limited to 1.2 miles dropping to 0.2 miles at a locations within fifty miles of the defendants' property. Ex. 10, Visibility Records (Sept. 12, 2004). Visibility varied at other locations around that part of Michigan but was generally one mile or less. The parties do not dispute, however, that Veltman was within 1,000 feet of the outbuilding when he made his observation.

The trooper testified that he could not see much through the opaque Visqueen, but he identified two marijuana plants when looking through the building's gable covered by the black mesh. He testified that he thought he saw stems and leaves of two plants that he thought were eight feet in height, although he acknowledged that he may have seen only one plant. Veltman said that he had extensive experience identifying marijuana plants from a distance: he has received some training in enforcing narcotic laws; he had been involved in a search that resulted in finding one hundred fifty to two hundred fifty marijuana plants in one location; he had seen plants ranging from a few inches to several feet high; he made several accurate identifications of marijuana plants from airplanes flying several hundred feet above the ground; and he searched for and seized marijuana plants growing in wooded areas and stream beds. On September 12, 2004, Veltman identified the plants he saw as marijuana, he says, because their color matched marijuana plants he had seized from creek bottoms, the plant leaves had serrated edges, and the height of the plants were characteristic of marijuana.

Veltman maintains that when he observed the plaints he did not know he was looking through a mesh material. He allowed that cinquefoil can be confused with marijuana plants from the distance that he made the observations but that cinquefoil is rarely grown in a greenhouse. Veltman took a digital photograph of the defendants' outbuilding at approximately noon on the day of the search from his early-morning vantage point. The photograph corroborates some of his testimony, although the outline of the plants is difficult to make out due to the lack of clarity of the picture. Ex. 6, Photograph of the Defendants' Property.

On September 13, 2004, Trooper Veltman swore to an affidavit in support of a search warrant for the residence and growing building. He wrote in the affidavit the following information:

-4-

1. Affiant is Tpr. William Veltman, a police officer employed by the Michigan State Police for a period of ten years.

2. Your affiant has received specialized narcotics training by the Michigan State Police; 10 years of experience has included over 100 investigations involving narcotics trafficking and the execution of over 30 search warrants.

3. Affiant has seen over 500 marijuana plants in various stages of growth.

4. On 09-11-04, I received information that marijuana plants were being grown at a residence located at 1131 Deer Run Road, and that the plaints were visible in the back of the property.

5. On 09-12-04, I approached the fenced in residence at 1131 Deer Run Road from adjoining property. From outside the fence I observed 3 structures covered with plastic visqueen [sic] which resembled greenhouses. The largest structure had an open gabled end, and I observed 2 large marijuana plants approximately 8 foot [sic] in height.

6. Affiant was also present in March of 2000 when a search warrant was served at 1131 Deer Run Road. In March of 2000 a hydroponic grow operation was found. Plant stems and roots left at the scene showed at least 50 large marijuana plants had been growing inside a shed. Also found inside the residence was a psilocybin mushroom grow operation.

7. As a result of the March 2000 search at 1131 Deer Run Road, affiant was involved in the service of a search warrant in the Mio area in March of 2000. The residence was located at 1301 Marsh, Oscoda County, Big Creek Township. Seized from the residence was [sic] 94 live marijuana plants and 67 cloned marijuana plants. This residence was owned by Michael Timothy Crane and was used to hide the marijuana plants that had been removed from Crane's residence at 1131 Deer Run Road. STING complaint #STG-35-00.

8. Affiant is aware through training and experience that people who grown [sic] large quantities of marijuana plant do so to process and sell the marijuana. Affiant is aware that the "rule of thumb" is that one mature marijuana plant produces one pound of process marijuana.

9. Affiant is aware through training and experience that people often use vehicles and outbuildings to hide controlled substances.

10. Affiant is aware through training and experience that people who are present or arrive during the service of a search warrant often have controlled controlled substances on their person.

11. Affiant knows through training and experience that people who grow / cultivate / process / sell marijuana often keep ledgers / records on paper or computers documenting the transactions.

12. Affiant is aware through training and experience that people who traffic in narcotics often possess quantities of cash, jewelry, stocks, bond, or other items of value as proceeds from their sale.

13. Affiant is aware through training and experience that people who traffic in the sale of narcotics often hide evidence such as equipment, receipts, proceeds, and other financial documents in safety deposit boxes and / or rented storage facilities.

14. Affiant is aware through past investigations that Michael Timothy Crane, w/m, 06-04-1961 and William Edwin Popham, w/m, 01-22- 1969, have been and are residents at 1131 Deer Run Road. William Popham is Crane's nephew. During the search of the residence in March 2000, mail and financial documents were located that identifies Michael Crane as the resident and owner.

15. Affiant ran a LEIN check on Michael Timothy Crane and MI S.O.S. shows his address to be 1131 Deer Run Road.

16. Affiant also checked with the 81st D.C. and learned that Michael Timothy Crane was arrested for OUIL in August 2003. Court records show his address to be 1131 Deer Run Road.

17. Affiant believes that a search of the residence and property will result in the seizure of marijuana plants as well as evidence that Michael Crane is involved in the trafficking of illegal narcotics.

Plaintiff's Mot. Suppress Ex. 3, Veltman Aff. at 1-2. A state court magistrate issued a search

warrant based on Trooper Veltman's affidavit that authorized the following search and seizure:

1. The person, place, or thing to be searched is described as and is located at:

1131 Deer Run Road, further described as a white mobile home with a wooden addition. Property is located in Arenac County, Moffatt Township. Property has 2 red garages which have black shingled roofs. There are also 3 structures covered with plastic visqueen [sic]. Property has a chain link fence surrounding the structures and buildings. Search to include any and all outbuildings. Search to include any and all vehicles present on the property as well as vehicles that arrive during the execution of this search warrant. Search to include any and all persons present or arriving during the execution of this search warrant.

2. The PROPERTY to be searched for and seized, if found, is specifically described as:

1. Any and all controlled substances, specifically but not limited to marijuana.
2. Proof of residency.
3. Any and all records pertaining to trafficking in controlled substances.
4. Any and all evidence / equipment used to cultivate marijuana plants or other controlled substances.
5. Any and all U.S. currency, gold, jewelry, stocks, bonds, certificates of deposit and items of value being proceeds of or used to facilitate trafficking controlled substances.
6. Any and all firearms being used in the protection of trafficking in controlled substances.
7. Any and all financial records / documents.

8.  Any and all records pertaining to or keys for safe deposit boxes of self storage facilities.

Plaintiff's Mot. Suppress Ex. 4, Search Warrant (Sept. 13, 2004).

The search warrant was executed the following day, on September 14, 2004.  According to the tabulation and return, the police seized the following property:

| Item Description | Location Found |
| --- | --- |
| $ 329 in currency | Popham's Bedroom |
| $214 in currency | Popham's Bedroom |
| Counterfeit Bills | Popham's Bedroom |
| 3 Plastic Bags with Suspected Marijuana | Popham's Bedroom |
| One Raven Arms Model MP-25 Cal. .25 Auto | Popham's Bedroom |
| One Spartan Camera | Blue GMC Pick-up |
| One Ziplock Bag with Suspected Marijuana | Blue GMC Pick-up |
| Five Polaroids of Dope Growing | Desk at Back Door of House |
| Two High Capacity Magazines | Popham's Bedroom |
| Six Silver $1.00 U.S. Coins | Popham's Bedroom |
| Digital Camera | Popham's Bedroom |
| Five High Capacity Magazines and Silencer | Popham's Bedroom |
| Invoices related to AK-47 parts and repair | Popham's Bedroom |
| Digital Video Camera | Popham's Bedroom |
| Laser Bore Sight | Popham's Bedroom |
| Property Tax Bills | Kitchen |
| Copies of U.S. Currency and Checks from D&M Distributing | Popham's Bedroom |
| Three High Capacity Magazines | Living Room |
| One TEK 9 Firearm | Living Room |

| | |
|---|---|
| Plastic Bag with Marijuana | Kitchen |
| Weight Scale | Kitchen |
| Case with Coins and Jewelry | Kitchen |
| One Check D&M Distributing | Popham's Bedroom |
| Two DVD Discs | Popham's Bedroom |
| One TEK 9 Firearm | Popham's Bedroom |
| Crossbow hanging on hallway wall | Popham's Bedroom |
| Comp. Generated Checks | Popham's Bedroom |
| Assorted Computer Equipment | Popham's Bedroom |
| Television | Popham's Bedroom |
| DVD Recorder | Popham's Bedroom |
| Satellite Dish and Receiver | Popham's Bedroom |
| Two High Capacity Magazines | Popham's Bedroom |
| 21 Photographs of Vehicles | Landing Near Kitchen |
| 43 Photographs of Marijuana | Landing Near Kitchen |
| Two Ammunition Bandoleers | Hallway |
| One Automatic Magazine | Popham's Bedroom |
| Unknown Firearm | None Listed |
| Safe | Popham's Bedroom |
| Bag of Change | Popham's Bedroom |
| Scale | Kitchen |
| Photographs of Vehicles | Kitchen |
| Drug Related Books | Landing Near Kitchen |
| Weapons Related Books | Landing Near Kitchen |
| TAPCO Catalogue | Landing Near Kitchen |
| Plastic Bag with Suspected Marijuana | Kitchen |

| | |
|---|---|
| Plastic Bag with Suspected Mushroom Pieces | Kitchen |
| Cookie Near Drugs | Kitchen |
| Plastic Change Bag | Kitchen |
| Sunbeam Electronic Scale | Kitchen |
| Multimedia Card | Popham's Bedroom |
| Rifle Scope | Kitchen |
| Various Boxes of Ammunition | Hallway |
| Shotgun Sling with Ammunition | Hallway |
| Mushrooms | Landing Near Kitchen |
| Dehydrator with Mushrooms | Landing |
| 32 Marijuana Plants | Outdoor Growing Building |
| Air Compressors | Garage |
| 4 x 4 All-Terrain Vehicle | Yard |
| 2 Motorcycles | Outbuilding |
| Trailer | Yard |
| Sandblaster | Garage |
| Chainsaw | 4 x 4 All-Terrain Vehicle |
| Engine and Engine Stand | Garage |
| Pressure Washer | Yard |
| Chipper | Outbuilding |
| Heater | Outbuilding |
| Power Winch | Garage |
| Welder | Garage |
| 3 Chainsaws | Garage |
| Blue GMC Pick-up | Yard |
| Mason Jars | Near Hallway |

| | |
|---|---|
| Canoe | Yard |
| Sylvan Boat | Yard |
| Polaris Indy 700 Triple | Yard |
| Unidentified Vehicle frame | Outbuilding |
| Welding Torch Set | Yard |
| Drill Press | Garage |
| Engine Hoist | Garage |
| High Capacity Magazines | Popham's Bedroom |
| Ammo Belt | Popham's Bedroom |
| Gun Parts Bags/ Shotgun Stocks | Popham's Bedroom |
| Four Die Sets | Popham's Bedroom |
| Rifle Scopes | Popham's Bedroom |
| Masonry Blades | Garage |
| Pipe Bender | Garage |
| Floor Jack | Garage |
| Chainsaw Sharpener | Garage |
| Extension Cord | Garage |
| Bolt Cutter | Garage |
| Vermiculite Bags | Livingroom |
| Toolbox | Garage |
| Stargreen Vermiculite | Livingroom |
| 3 Hoffmans Vermiculite | Livingroom |
| Pill Bottle | Kitchen |
| Ammunition | Popham's Bedroom |
| One Blue Box D&G Tools | Popham's Bedroom |
| Hand Priming Tool RCBS | Popham's Bedroom |

| | |
|---|---|
| One Box Lee-Brand Power Scale | Popham's Bedroom |
| 115 Marijuana Plants | Detached Outbuilding/ Garage Grow Room |
| Timers, Grow Lights, Ph Monitors | Detached Outbuilding/ Garage Grow Room |
| Step Ladder | Detached Outbuilding/ Garage Grow Room |
| Water Pumps | Detached Outbuilding/ Garage Grow Room |
| Water Tank, Tubing | Detached Outbuilding/ Garage Grow Room |
| Cuesnon Trombone Gold | Yard |
| Trim a Brake | Travel Trailer |
| One Sound Storm Laboratories | Travel Trailer |
| Stereo | Travel Trailer |
| Outdoor Fogger | Garage |
| Two Doors for Pick-up | Garage |
| Television | Livingroom |
| Two Plastic Bags with Suspected Mushrooms | Blue GMC Pick-up |
| 12" Drill Blade | Shed in Yard |
| Various Amplifiers | Blue GMC Pick-up |
| Speakers | Blue GMC Pick-up |
| Night Vision Goggles | Popham's Bedroom |
| CD Player | Blue GMC Pick-up |

Plaintiff's Mot. Suppress Ex. 5, Search Inventory.

The grand jury returned the indictment on January 26, 2005. It was unsealed on January 31, 2005. The motion to suppress was timely filed thereafter.

-11-

II.

The defendants contend that the search warrant is invalid because its supporting affidavit includes information tainted by a prior illegal search. The government acknowledges, as it must, that a magistrate's probable cause determination may not be based on illegally obtained evidence. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963). However, in this circuit, when illegally obtained information is included in a search warrant affidavit, the resulting search can be upheld if, after excising the tainted information, the redacted affidavit is sufficient to establish probable cause. *See United States v. Jenkins*, 396 F.3d 751, 757-60 (6th Cir. 2005) (holding that "[i]f the application for a warrant 'contains probable cause apart from the improper information, then the warrant is lawful and the independent source doctrine applies, providing that the officers were not prompted to obtain the warrant by what they observed during the initial entry'") (quoting *United States v. Herrold*, 962 F.2d 1131, 1141-42 (3d Cir.1992)).

Without the tainted information, the search warrant affidavit in this case consists of statements that the affiant received an anonymous tip that marijuana plants were being grown at 1131 Deer Run Trail, and Trooper Veltman personally observed marijuana growing in the outbuilding when he was present on September 12, 2004. The government does not seriously contend that the anonymous tip can save the search warrant. "Rarely can an anonymous tip by itself constitute a basis for reasonable suspicion[, let alone probable cause] . . . because an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." *United States v. Hudson*, 405 F.3d 425, 432 (6th Cir. 2005) (internal quotes omitted) (citing *Florida v. J.L.*, 529 U.S. 266, 270 (2000), and *Alabama v. White*, 496 U.S. 325, 329 (1990)). The government insists, however, and the defendants concede, that Trooper Veltman's personal observations alone would

-12-

establish probable cause to search the premises, provided that they are true and not themselves tainted by illegal action.

It is that proviso that presents the contested issues in this case. The defendants argue that Veltman's own testimony establishes that he made his observations from within the curtilage of the defendants' dwelling, which he entered without a warrant, rendering the information tainted. They also argue that Veltman's statement that he observed marijuana plants growing in the outbuilding is incredible and false, since it was not possible to see what Veltman claims he saw from his vantage point and under the lighting conditions that existed at the time.

If Veltman's description of his observations is false or made with reckless disregard of the truth, then it may not be considered in determining probable cause. *See Franks v. Delaware*, 438 U.S. 154, 155-56, 171-72 (1978); *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). However, the Court is satisfied that Trooper Veltman's statements were not false or reckless. The evidence establishes that Veltman arrived at his observation point in the early morning hours of September 12, 2004, beginning at 6:15 a.m. according to his testimony. The sun would not rise until an hour later, but ambient light increased to the point of civil twilight over the next half-hour. Veltman said that he remained in place over that period of time and perhaps longer. According to the U.S. Naval Observatory, civil twilight is defined to begin in the morning when the center of the Sun is geometrically six degrees below the horizon and marks "the limit at which twilight illumination is sufficient, under good weather conditions, for terrestrial objects to be clearly distinguished." *Explanatory Supplement to the Astronomical Almanac* 482ff (P. K. Seidelmann ed. 1992) (cited by U.S. Naval Observatory at http://aa.usno.navy.mil/faq/docs/RST_defs.html). The defendant contends that the weather conditions limited visibility, but there is no evidence that vision

was obstructed over the 150 feet between Veltman and the outbuilding.  Although the plants were not in the open air, the Court believes that the fabric and plastic used to cover the outbuilding permitted the passage of enough light to allow an observer to discern the silhouette of the marijuana plants, which a person of sufficient experience could distinguish as such.  Veltman had that experience.  Although Veltman's conclusion that he saw marijuana growing in the building might not withstand precise analysis, it was not false or made with reckless disregard of the truth.

The question of where Veltman was standing when he made his observation presents a different issue.  The defendants argue that the observation of the officer should be excluded from consideration because he was standing on the curtilage of their home at the time.  Citing *United States v. Reilly*, 76 F.3d 1271, 1272 (2d Cir. 1996), they contend that their property is in a rural setting and therefore the curtilage of the home extends farther than in an urban or suburban setting. The government contends that the trooper stood in the open field area surrounding the curtilage of the defendants' home when making his observations.

The Supreme Court has recognized that "the Fourth Amendment protects the curtilage of a house and that the extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." *United States v. Dunn*, 480 U.S. 294, 300 (1987).  The Supreme Court has established the following factors for determining whether an area external to a residence is included in the curtilage of the home:

> Drawing upon the Court's own cases and the cumulative experience of the lower courts that have grappled with the task of defining the extent of a home's curtilage, we believe that curtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses

-14-

> to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*Id.* at 301.  The Court counseled against a "mechanical[]" application of these factors, but rather directed that they should be considered as "analytical tools" to be used to determine the central issue: "whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection."  *Ibid*.  Applying these factors, the *Dunn* Court held that a barn located sixty yards from a house and outside of a surrounding fence was not within the curtilage of the defendant's house.  The Court noted with significance that "law enforcement officials possessed objective data indicating that the barn was not being used for intimate activities of the home," and the defendant "did little to protect the barn area from observation by those standing in the open fields."  *Id.* at 302-03.

The evidence at the evidentiary hearing indicates that the area from which Veltman observed the outbuilding was outside of a fence line, on the edge of a wooded area, in a rural setting.  The defendants filed an affidavit stating that there was a vegetable garden in the area outside the fence and vehicles and scrap steel were stored there, but there was no testimony at the hearing that located the garden in relation to the fence.  After viewing the photographs of the area, however, it is apparent that the wooded area outside the fence was not "intimately tied" to the defendants' home.  The fence separated the area from the immediate yard; it was not within any enclosure related to the home; the area was not used for domestic activity; rather junk cars were stored there and dogs apparently were allowed to run; and there were no visible steps taken by the defendants to protect the area from observation by people passing by.  Although the area within the yard – including the house, outbuildings, and items stored within – was under the Fourth Amendment's "umbrella" of protection, a reasonable officer likely would conclude that the area outside the fence in this rural

-15-

setting was actually outside the curtilage rather than within it. Trooper Veltman, therefore, did not violate the defendants' Fourth Amendment rights when he entered on the land without a warrant and made his observations.

III.

The defendants also contend that the search warrant was overbroad with respect to the places to be searched and the items to be seized. Specifically, they argue that the affidavit did not support a warrant to search anything but the outbuilding and the direction to seize "items of value" allowed a "general exploratory rummaging in a person's belongings," which the particularity requirement is intended to prevent. *See Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).

The search warrant affidavit established probable cause to believe that marijuana was being manufactured on the defendants' premises. The search warrant authorized the search of the residence ("a white mobile home with a wooden addition"), two red garages, three structures covered in Visqueen, and vehicles stored on the property, all of which were surrounded by the chain link fence. Based on the officer's affidavit, it was reasonable to conclude that contraband, equipment, and records of a marijuana growing operation may be located within the buildings, including the dwelling, within the curtilage. When probable cause exists to search one building "within the curtilage of the property, there [is] no need to demonstrate probable cause to search each building on the property." *United States v. Campbell*, 256 F.3d 381, 390 (6th Cir. 2001); *see also United States v. Bennett*, 170 F.3d 632, 639 (6th Cir. 1999) (upholding search of multiple buildings on property because "there is no need to search for evidence to link the outbuilding to the allegations in the affidavit; the shop building and the residence are sufficiently connected because they are both within the curtilage of the defendant's property"); *United States v. Watkins*, 179 F.3d 489, 505-06

-16-

(6th Cir. 1999) (Boggs, J., concurring) (collecting cases) (allowing search of outbuilding within sixty feet of main residence that "was not divided by any fence, residential dividing line or other device that would take it out of the normal designation of curtilage"); *United States v. Smith*, 783 F.2d 648, 652 (6th Cir. 1986). The Court finds no constitutional violation resulting from the search of the dwelling and other structures within the fence line.

Nor does the seizure of weapons, equipment that could be used to grow marijuana, or records present a constitutional problem. The police may search for and seize contraband, and evidence, instrumentalities, and fruits of crime. *See Warden v. Hayden*, 387 U.S. 294, 301 (1967); *United States v. Truitt*, 521 F.2d 1174, 1177 (6th Cir. 1975); *see also United States v. Blair*, 214 F.3d 690, 697 (6th Cir. 2000) (upholding warrant describing "the items to be seized as '[b]ooks, records, receipts, notes, ledgers, airline tickets, money orders, passports, and other papers relating to the transportation, importation, ordering, sale, and distribution of controlled substances.' The warrant also authorized seizure of records of financial transactions and 'electronic equipment to aid them in their drug trafficking activities.' Thus, the warrant specified that the records sought were those related to drug-trafficking activities and did not violate the particularity requirement of the Fourth Amendment").

Whether the provision in the warrant to seize "items of value" satisfies the Fourth Amendment's particularity requirement presents a different question. It is beyond debate that "[a] general order to explore and rummage through a person's belongings is not permitted." *United States v. Blakeney*, 942 F.2d 1001, 1026 (6th Cir. 1991). However, "the degree of specificity required [for a search warrant] is flexible and will vary depending on the crime involved and the type of items sought. Thus, a description is valid if it is as specific as the circumstances and the nature of the

activity under investigation permit." *United States v. Henson*, 848 F.2d 1374, 1383 (6th Cir. 1988) (internal quotes and citations omitted).

In *United States v. Campbell*, 256 F.3d 381 (6th Cir. 2001), the court of appeals made the following observation:

> The Fourth Amendment to the United States Constitution requires that a warrant describe with "particular[ity] . . . the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. Courts have held that a warrant referring to stolen property of a certain type is insufficient if that property is common. *See United States v. Spilotro*, 800 F.2d 959, 965 (9th Cir.1986) (description of "gemstones and other items of jewelry" not sufficiently particular in search of jewelry store). If the purpose of the warrant is to seize illicit property or contraband, however, a general reference is permissible. *See United States v. Morris*, 977 F.2d 677, 680- 81 (1st Cir.1992) ("drugs and narcotics" sufficient).
>
> . . .
>
> This court has made it clear that general warrants not describing with particularity things to be searched can "create a danger of unlimited discretion in the executing officer's determination of what is subject to seizure and a danger that items will be seized when the warrant refers to other items." *United States v. Savoca,* 761 F.2d 292, 298-99 (6th Cir.1985). Yet, this requirement of specificity is flexible and varies with the crime involved and the types of items sought. Thus, this court has stated that a description is valid "if it is as specific as the circumstances and the nature of the activity under investigation permit." *United States v. Ables*, 167 F.3d 1021, 1033 (6th Cir.1999).
>
> In this case, the warrant was as specific as the circumstances permitted since the officers were looking for any weapons, not just stolen weapons. The officers, some of whom were members of a federal-state task force, were aware not only that some of the stolen items from Lenawee County were at 8670 Jennings Drive, but that Campbell's record indicated that he had prior felony convictions. Therefore, the officers knew that Campbell could be subject to prosecution as a felon in possession under federal or state law. 18 U.S.C. § 922(g); M.C.L. § 750.224f. Since possession of any weapon would potentially be illegal under these statutes, it was not improper for the search warrant for Campbell's residence to cover "[a]ny and all firearms."

*Id.* at 388-89.

The paragraph in the search warrant that the defendants challenge reads: "Any and all U.S. currency, gold, jewelry, stocks, bonds, certificates of deposit and items of value being proceeds of or used to facilitate trafficking controlled substances." Search Warrant, ¶ 5. The scope of this provision indeed is quite broad and required the officers to exercise judgment in the field to determine whether "items of value" in fact were "proceeds of . . . drug trafficking." Although a search warrant is not invalid if it requires "officers executing the warrant [to] exercise some minimal judgment as to whether a particular [item] falls within the described category," *Blair*, 214 F.3d at 697, at some point the description of the items to be seized becomes so general as to no longer be "particular." When viewed against the background of the affidavit, the most that can be established in this case is that the affiant learned from other cases that sometimes drug manufacturers have valuable things near their place of operations, and occasionally those valuables were acquired with the proceeds of drug sales. In this case, there is no information that such valuable things actually would be found on the premises, or that any sale of contraband occurred on the premises or by the defendants. The premises also was used mainly as a dwelling, where one might expect a person to keep his possessions, ill-gotten or not, so the link between property and illegal activity was tenuous without more information. There was no basis outlined in the warrant for distinguishing between valuable items that were drug proceeds and those that were not. The challenged provision in the search warrant, therefore, amounted to an authorization to the police to seize *everything* of value found on the property, which is exactly what they did.

Although some items such as grow lights, water pumps, tubing, and cultivation tools plainly fell within the authorization to seize "equipment used to cultivate marijuana," other items seized included several cameras, speakers, a CD Player, a pick-up truck and two spare doors, a 4 x 4 all-

-19-

terrain vehicle, two motorcycles, a chainsaw, and a trombone. From the information in the affidavit, it is difficult to conceive of a link between marijuana growing and these items, especially the trombone.[1] The voracious appetite for seizing items exhibited by the officers executing the search warrant demonstrates the danger of overbroad warrants and the need to limit government authority to seize only particularly-described items for which there is probable cause. The Court finds in this case that paragraph 5 of the search warrant is overbroad because it fails the particularity requirement of the Fourth Amendment, and items seized pursuant to that paragraph were seized unlawfully.

IV.

The defendant has requested that the improperly seized items be returned. "The general rule is that seized property, other than contraband, should be returned to the rightful owner after the criminal proceedings have terminated." *Sovereign News Co. v. United States*, 690 F.2d 569, 577 (6th Cir.1982) (quoting *United States v. Francis*, 646 F.2d 251, 262 (6th Cir.1981)). Motions for return of property were governed by Federal Rule of Criminal Procedure 41(e) until an amendment to the rules in 2002. 3A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 673 (3d ed. 2004). Now, any person "aggrieved . . . by the deprivation of property may move for the property's return" under Rule 41(g).

Under either version of the rule allowing motions to return property:

no standard is set forth in the rule to govern the determination of whether property should be returned to a person aggrieved either by an unlawful seizure or by deprivation of the property. The fourth amendment protects people from unreasonable seizures as well as unreasonable searches and reasonableness under all of the circumstances must be the test when a person seeks to obtain the return of property.

---

[1] Unless, of course, there was evidence that the trombone actually was used to smoke marijuana (which there was not), in which case there truly would be trouble in River City.

Fed. R. Crim. P. 41 advisory committee's note to 1989 amendments (citations omitted). Therefore, when considering a motion to return, the court must balance the legitimate needs of the United States against the property rights of the moving party. *Ibid; United States v. Francis*, 646 F.2d 251, 263 (6th Cir. 1982). When the government has a "continuing interest" in the property, the property does not have to be returned. *Ibid.* The government can demonstrate a continuing interest by showing that the property is contraband or necessary for an ongoing investigation. *United States v. LaFatch*, 565 F.2d 81, 83 (6th Cir.1977) (stating that "[t]he general rule is that seized property, other than contraband, should be returned to its rightful owner once the criminal proceedings have terminated").

The initial issue for consideration "is whether [the movant] can show a sufficient property interest in the [items] to demand their return." *Sovereign News Co.*, 690 F.2d at 577. The burden can be satisfied by a showing that the government seized the items from the movant's possession. *United States v. Estep*, 760 F.2d 1060, 1064 (10th Cir. 1985) (noting that "[t]he seizure of property *from someone* is *prima facie* evidence of that person's entitlement"). Mere possession is enough to establish some form of interest. *See Northern Pacific Railroad Co. v. Lewis*, 162 U.S. 366 (1896).

The defendants have a demonstrated interest in the seized property because it was seized from their residence. The government has not demonstrated a continuing interest in the property seized pursuant to paragraph 5 of the search warrant. The Court does not believe that the interest of justice is served by the government retaining property that was illegally seized, is not contraband or a dangerous instrumentality, and has no apparent relationship to the charges in the indictment or other continuing investigation.

-21-

V.

The Court finds that probable cause derived from legally obtained information supported the issuance of the search warrant, but that paragraph 5 of the warrant is overbroad.  There is no basis to suppress evidence, instrumentalities of fruits of the crime at trial.  However, the other items seized shall be returned.

Accordingly, it is **ORDERED** that the defendants' motion to suppress evidence and return property [dkt # 19] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the government shall return the following items to the defendants or their designees:  Spartan Camera, speakers, multiple amplifiers for the stereo system and CD Player from the Blue GMC Pick-up; digital camera, digital video camera, two DVD discs, assorted computer equipment, television, DVD recorder, satellite dish and receiver, and four die sets from Popham's bedroom; air compressors, sandblaster, engine and engine stand, power winch, welder, three chainsaws, drill press, engine hoist, masonry blades, pipe bender, floor jack, chainsaw sharpener, extension cord, bolt cutter, spare pick-up truck doors, and toolbox from the garage; 4 x 4 all-terrain vehicle, two motorcycles, trailer, chainsaw (on the all-terrain vehicle), pressure washer, chipper, Blue GMC pick-up, canoe, sylvan boat, polaris Indy 700 triple, unidentified vehicle frame, welding torch set, trombone, trim a brake, sound storm laboratories, stereo, and 12" drill blade from the yard, outbuildings, sheds, and a travel trailer; and a television from the livingroom.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: August 15, 2005

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 15, 2005.

s/Tracy A. Jacobs
TRACY A. JACOBS